Michael **VALENTINE** Petitioner

v.

Steven **HUFFMAN,** Warden
Respondent

**No. 1:99 CV 535.**

United States District Court,
N.D. Ohio,
Eastern Division.

July 22, 2003.

Barbara A. Farnbacher, Esq., David H. Bodiker, Esq., Felice L. Harris, Esq., Pamela A Conger–Cox, Esq., Office of the Public Defender, State of Ohio, Columbus, OH, for Plaintiff.

Mark J. Zemba, Esq., Office of the Attorney General, State of Ohio, Corrections Litigation Section, Cleveland, OH, for Defendant.

## MEMORANDUM OF OPINION AND ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

WELLS, District Judge.

Petitioner Michael Valentine was prosecuted, tried, and convicted of 20 carbon-copy counts of rape and 20 carbon-copy counts of felonious sexual penetration of a

minor. None of the counts included a specific date. Each of the 40 counts charged that each crime occurred "March 1, 1995 to January 16, 1996," a time-span of ten and one-half months, or 322 days.

Upon return of the two sets of 20 identical jury verdicts, Mr. Valentine was sentenced to serve 40 consecutive life sentences. The Ohio Court of Appeals affirmed, but reduced the number of felonious sexual penetration convictions to 15, citing insufficient evidence. Which of the 20 such counts the Court of Appeals eliminated is impossible to discern as they are all identical. The focus here is on the carbon-copy charges in this case and whether they comport with the due process mandated by the Constitution of the United States. Petitioner Valentine has argued from the outset that he cannot defend against the charges and they violate due process (Tr. p. 516–518). This Court agrees that they do. Petitioner Valentine brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons below set forth, a writ of habeas corpus will issue.

### I. Habeas Claims

Mr. Valentine raises the following claims: (1) that his due process rights were violated when the indictment failed to specify a date or distinguish between conduct on any given date; (2) that his constitutional right to confrontation was denied when impermissible hearsay evidence was relayed to the jury; (3) that he was denied a fair trial and his Fifth, Sixth, and Fourteenth Amendments rights were violated when the prosecutor made improper and prejudicial remarks during closing argument; and (4) that the evidence presented against him at trial is constitutionally insufficient to sustain his convictions.

This Court referred Mr. Valentine's petition to United States Magistrate Judge William H. Baughman, Jr. for a report and recommendation ("R & R"). Magistrate Judge Baughman recommended that Mr. Valentine's petition for a writ of habeas corpus be denied in its entirety. (Docket no. 31.) Mr. Valentine timely objected to the R & R. (Docket no. 36.)

After conducting a de novo review of the R & R and objections, the Court concludes that Mr. Valentine's petition for a writ of habeas corpus must be granted on his first claim.

### II. Factual and Procedural Background

Mr. Valentine was indicted on 24 May 1996 by a Cuyahoga County, Ohio, Grand Jury for 20 separate counts of rape of his stepdaughter, "V" or "the child," a minor under the age of 13, each with an offense date of 1 March 1995 to 16 January 1996,[1] and 20 separate counts of felonious sexual penetration of the child each with an offense date of 1 March 1995 to 16 January 1996.[2] (State's Ex. A.) Mr. Valentine requested a bill of particulars which was

---

1. Each of the 20 counts is identical to the others. They charge Mr. Valentine: "engaged in sexual conduct with [the child] not his spouse by purposely compelling her to submit by the use of force or threat of force. [The child] being under the age of 13 years, to-wit: d.o.b. 11–18–87." Under date of offense: "March 1, 1995 to January 16, 1996." (State's Ex. A.)

2. The 20 counts of felonious sexual penetration are identical. They charge Valentine: "without privilege to do so inserted a part of the body, an instrument, apparatus or other object to-wit: finger, into the vaginal or anal cavity of another, to-wit: [the child], not the spouse of the offender and who was under the age of 13 years, to-wit: d.o.b. 11–18–87, by purposely compelling her to submit by force or threat of force." Under date of offense: "March 1, 1995 to January 16, 1996." (State's Ex. A.)

provided by the State on 3 May 1996 (Tr. p. 516, 531). The bill of particulars provided no remedy for the lack of indictment specificity. It provided only the same 322 day time span, 1 March 1996 to 16 January 1996 (Tr. p. 521).

## A. Trial

Mr. Valentine's trial began on 12 August 1996, when the child was eight years and eight months old.

The following evidence pertinent to this habeas petition was adduced at trial:

V's second grade teacher at Watterson–Lake Elementary School, Ms. Linda Porter, testified that the child was having some behavior problems in class and Ms. Porter had to put the child's desk beside her desk because other students would not sit by the child. Ms. Porter testified that V approached her one day when the class was relatively quiet and asked to talk with Ms. Porter.[3] V asked Ms. Porter, "Do you know why I act so crazy?" After Ms. Porter answered "no," the child's lips started quivering and she proceeded to tell Ms. Porter that Mr. Valentine had been touching her in her private area. (Tr. p. 225–31.) At the time she reported this, the child was approximately eight years old.

Ms. Porter then took V to the principal, Ms. Sheila Williams. Ms. Williams testified that when Ms. Porter and V appeared at her office, both were very upset. Ms. Williams talked to the child, while Ms. Porter went back to her class. Ms. Williams testified that V said that her stepfather had been touching her. The principal called 696–KIDS and V's mother, Tammie Valentine. Mrs. Valentine came right away and was very upset about the situation. Ms. Williams did not let Mrs. Valentine take V home, and they waited

for a social worker to arrive. The social worker came and talked to V. He then talked to Mrs. Valentine and allowed V to go home with her mother, while he followed them. (Tr. p. 253–55.)

When petitioner Michael Valentine went home that day, he was told by the social worker about what happened and that he had to leave the house. Four children live with Mrs. Valentine and petitioner: Mr. and Mrs. Valentine's two children and Mrs. Valentine's two children who are Mr. Valentine's stepchildren. Mr. Valentine moved out of the house that evening. (Tr. p. 660.)

The next day, another social worker, Teriea Anderson, went to V's school and interviewed the child, together with detectives Coleman and Mulhall. Ms. Anderson testified that V stated during that interview that her stepfather Mr. Valentine had been bothering her for about a year, that he would put his penis in her mouth and his finger and penis "in her butt," that some white stuff came out of his penis when he put it in her mouth. (Tr. p. 445–54.) Ms. Anderson testified that the child stated that she was touched by her stepfather about two hundred times. After further inquiry by Ms. Anderson, V stated that Mr. Valentine put his penis in her mouth about twenty times, and "in her butt" about ten times. (Tr. p. 453.)

Medical examinations neither confirmed nor excluded sexual abuse. The child's family physician, Dr. Ann Reischsman, testified that she had previously examined V on 19 June 1995 in a routine well-child checkup at seven and a half years of age and the examination result was normal. (Tr. p. 419.) On 7 February 1996, Dr. Reischsman examined V for sexual abuse. Dr. Reischsman found that the child's labia

---

**3.** The testimony of social worker Teriea Anderson (Tr. p. 438, 442) and Mrs. Valentine

(Tr. p. 604) was that it was on 17 January 1996.

minora (outer lips of the vagina) were red interiorly and had a slight gape, meaning the labia minora were spread apart instead of closing up against each other as they normally are in a child. Her hymen was thick and dilated with notching which Dr. Reischsman had not found in her June 1995 examination of the child. (Tr. p. 420–21.) Dr. Reischsman opined that the changes would make her suspicious of sexual abuse, but she also stated that she was not an expert in sexual abuse. (Tr. p. 422.) In the February 1996 exam, Dr. Reischsman took medical history from V and was told by the child that Mr. Valentine had been touching her private area for about a year, that he used his hand, penis, and mouth to touch her, and that he put his penis inside her vagina. (Tr. p. 424–25.)

On 26 February 1996, V was evaluated and examined by Dr. Mark Feingold, a pediatrician at Metro Health Medical Center. (Tr. p. 385.) Dr. Feingold testified that his examination of the child showed that there was slight irritation and redness of her labia minora and that she had a septated hymen, which is a variation of a normal hymen and can be present in a normal child. (Tr. p. 388, 390.) Dr. Feingold concluded that the findings of his examination were within normal, but did not exclude the possibility of sexual abuse, i.e., that the findings neither confirmed, nor ruled out sexual abuse. (Tr. p. 391.)

The child testified that during the day time when her mother was out, in the living room Mr. Valentine would put his penis in her mouth, which happened about twenty times, (Tr. p. 283), and he would put his finger in her vagina, which happened about fifteen times (Tr. p. 286). She testified that at night when her mother was asleep (Tr. p. 290), Mr. Valentine would go in her room that she shared with her brother Adam, wake her up, and put his penis in her butt. She testified that this happened about ten times. (Tr. p. 293.) She testified that Mr. Valentine did similar things to her during the day time when her mother was away, in her parents' room, the toy room, and her room. (Tr. p. 294.) V testified that the sexual abuse happened when she was in the second grade, but she could not remember the month or the season. (Tr. p. 284.)

On cross-examination, the child stated that Mr. Valentine touched her twice a day, every day of the week, and every week while she was in the second grade. (Tr. p. 330–31.) She testified that the molesting happened in the living room fifteen times, and in her bedroom ten times. (Tr. p. 334.) The child also testified that she could not remember the first time the abuse happened (Tr. p. 349, 352), nor the second or third time it happened (Tr. p. 353), but she did remember that it happened (Tr. p. 353).

The child testified that on the day she told her teacher about the sexual abuse, nothing unusual happened at school and she all of a sudden wanted to tell the teacher about it. (Tr. p. 345.) She also testified that Mr. Valentine was injured in an accident about a year ago, that he had stitches everywhere, but he kept on molesting her when he was recovering from the injury. (Tr. p. 347.)

Detective Mulhall testified that the time "March 1, 1995" in the indictment was chosen by him because the child indicated that the abuse happened in the Spring when she was in the first grade, and Detective Mulhall thought Spring starts with March 1. (Tr. p. 502.) However, V testified that she did not tell anybody that the sexual abuse started in March 1995 and that it happened a few months after she started the second grade and the weather was getting cold (Tr. p. 348—49).

Petitioner Valentine testified at trial. He denied that he touched V. Mr. Valen-

tine testified that he was in a car accident in April 1994.[4] He injured his ribs, knee and right hand and was off work for three weeks. (Tr. p. 588.) Around the end of May 1995, Mr. Valentine was diagnosed with hepatitis and was warned by the doctor not to have contact with his family members. (Tr. p. 593.) He testified that the child was a good liar (Tr. p. 603), that she may be mad at him for not adopting her (Tr. p. 605), that she had a friend who was molested by a male relative (Tr. p. 610), and that V had watched educational documentary movies about child abuse (Tr. p. 615–16).

The child's mother testified that she did not know about the sexual abuse until the school called her. (Tr. p. 657.) She also testified that even after V made the allegations, the child did not seem to fear Mr. Valentine when she saw him. (Tr. p. 662.) Mrs. Valentine admitted that even though she signed a safety plan promising not to let Mr. Valentine have any contact with V, she took the child and her other children to visit Mr. Valentine after he moved out. (Tr. p. 676–78.)

Mr. Valentine's brothers, Joseph and Dennis, both testified that V acted normal towards her stepfather, that she did not seem to fear him, and that there appeared to be no hostility between the child and Mr. Valentine during the time of the alleged abuse. (Tr. p. 546, 568.)

On rebuttal, Mr. Andre Piskura, a social worker, testified that V's mother and Mr. Valentine both signed a safety plan for the child, which provided that Mr. Valentine would not have any contact with her. (Tr. p. 708–09.)

## B. Verdict

The jury was given 40 verdict forms consisting of 20 identical forms, each for forcible rape of a person less than 13 years of age between 1 March 1995 and 16 January 1996 (Tr. p. 831), plus 20 identical forms, each for felonious penetration of a person under 13 years of age with force between 1 March 1995 and 16 January 1996. As the trial judge told the jury, "the first twenty counts all read the same" and, "as to counts twenty-one through forty, . . . each count reads with the same language." (Tr. p. 833.) Counsel for defendant objected: "And also this part about the time. We have an indefinite time, you specified here." (Tr. p. 838). The judge reiterated that he had "instructed them [the jury] they must find beyond a reasonable doubt from March 1, 1995 to January 16, 1996." (Tr. p. 839.)

After taking the first jury verdict, the Court inquired: "Will all members of the panel that made the findings with respect to counts one through twenty with respect to the guilty verdicts in both of the findings (victim under the age of 13 and use of force), raise your hand?" The judge then announced: "Let the record reflect all 12 members of the jury has (sic) raised their right hands with respect to counts 21—40. The findings are the same: guilty. All members of the panel that have raised, or that have signed their names to this guilty form, 21—40, and the specific findings . . . . raise your right hands." Then, "let the record reflect all members of the panel have raised their hands." He then dismissed the jurors. (Tr. p. 852–853.)

---

4. The transcript stated that it was in 1994, but the testimony of Mr. Valentine and V indicated that it was in 1995. Mr. Valentine testified that the accident happened while he was living on West 67 Street (Tr. p. 588), and he moved to West 67 Street in October 1994 (Tr. p. 584). V's mother Tammie Valentine testified that the accident occurred on 4 April 1995. (Tr. p. 650.)

Mr. Valentine immediately was sentenced to 40 consecutive life terms by Common Pleas Judge A.J. Calabrese.

## C. Court of Appeals

On 17 January 1997, Mr. Valentine appealed his conviction to the Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio. Mr. Valentine assigned sixteen counts of error in his appeal, including:

1. Defendant was denied due process of law when he was allowed to be convicted upon an indictment which did not specify a date or distinguish between conduct on any given date.

2. Defendant was denied his right of confrontation and cross-examination when the court permitted a social worker investigator Teriea Anderson and others, to relate what the child told her in her interview.

. . . . .

8. Defendant was denied a fair trial when the prosecutor argued the merits of the defendant's conviction to show that he had a bad character.

9. Defendant was denied a fair trial by reason of improper argument by the prosecutor during closing argument.

. . . . .

15. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal.

16. Defendant is entitled to a new trial because the verdicts are against the manifest weight of the evidence.

(State's Ex. F.)

On 17 July 1993, the Ohio Court of Appeals affirmed the conviction for the 20 counts of rape but because of insufficient evidence reduced the 20 convictions for felonious sexual penetration to 15. (State's Ex. H.)

On Mr. Valentine's first assignment of error, denial of due process for lack of date or conduct specificity, the Court of Appeals reasoned that V was a young child who was unable to remember exact dates and times, that there was no evidence that the state had more specific information, and that Mr. Valentine failed to demonstrate any material detriment to his ability to defend himself resulting from the lack of specificity of the dates listed in the indictment; therefore no error was found.

On the second assignment of error, denial of confrontation and cross-examination, the Court of Appeals found that the social worker's testimony was admissible because the child made her statement to the social worker for the purpose of medical diagnosis or treatment. The court also found that the child's statement to the teacher and the principal constituted excited utterances.

On the eighth and ninth assignments of error, prior criminal history and prosecutorial misconduct, the Court of Appeals found that the prosecutor's reference to Mr. Valentine's past criminal history was for the purpose of impeachment, and that the trial court reminded the jury that closing argument did not constitute evidence; therefore Mr. Valentine was not denied a fair trial.

On the fifteenth assignment of error, denial of due process, the Court of Appeals concluded that viewing the medical evidence and other evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of both rape and felonious sexual penetration proven beyond a reasonable doubt.

On the sixteenth assignment of error, insufficiency of evidence, the court found that there was sufficient evidence supporting 20 verdicts of rape and 15 verdicts of felonious sexual penetration, but no evidence to support five of the counts of felonious sexual penetration.

## D. Ohio Supreme Court

Mr. Valentine moved for reconsideration on 28 July 1997 (State's Ex. I), which the Ohio Court of Appeals denied on 8 August 1997 (State's Ex. J.) Mr. Valentine appealed to the Supreme Court of Ohio on 15 September 1997. His arguments relevant to this petition are:

### Proposition of Law No. I:

A defendant is denied due process of law when he is tried and convicted on an indictment which does not specify a date or distinguish between conduct on any given date.

### Proposition of Law No. II:

A defendant is denied his right of confrontation in cross-examination where the court permits a social worker and other witness to relate what the alleged victim said in interviews.

. . . . .

### Proposition of Law No. VIII:

Defendant was denied a fair trial when the prosecution attorney argues [sic] merits of the defendant's conviction based upon the fact defendant had a bad character and makes other improper arguments.

. . . . .

### Proposition of Law No. XII:

Defendant was denied due process of law when the court overruled his motion of judgment of acquittal.

(State's Ex. N.)

On 11 December 1997, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (State's Ex. P.)

## E. Petition for Post–Conviction Relief

On 8 July 1998, Mr. Valentine filed, *pro se*, a petition to vacate or set aside sentence in the Common Pleas Court for Cuyahoga County, Ohio, claiming ineffective assistance of counsel. (State Ex. R.) His petition was denied on 24 August 1998. (State Ex. S.) On 8 September 1998, the trial court vacated the 24 August 1998 order and placed the case on Judge Burnside's docket. (State Ex. T.) Mr. Valentine's petition for post-conviction relief was dismissed on 22 March 2000 as untimely. The decision was affirmed on 18 December 2000 by the Ohio Court of Appeals. (State Mem. Regarding Disposition of Post–Conviction Relief Petition, Docket no. 39.) Mr. Valentine did not appeal the decision to the Ohio Supreme Court.

## III. R & R AND PETITIONER'S OBJECTIONS

## A. R & R

As a preliminary matter, Magistrate Judge Baughman found that the Court has jurisdiction over Mr. Valentine's petition, that an evidentiary hearing is unnecessary in this case, and that Mr. Valentine has exhausted his state remedies. On Mr. Valentine's third claim, that the prosecutor made improper and prejudicial remarks during closing argument, the Magistrate Judge reasoned that Mr. Valentine procedurally defaulted on part of the claim. Magistrate Judge Baughman concluded that Mr. Valentine did not procedurally default on his insufficiency of evidence claim.

On Mr. Valentine's first claim, defective indictment, the Magistrate Judge cited *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), and *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) as the controlling United States Supreme Court precedents on the issue. He distinguished *Isaac v. Grider*, in which the Sixth Circuit held that an indictment with identical charges violated due process by creating a double jeopardy risk, on the ground that Mr. Valentine does not claim a double jeopardy violation, nor is there a double

jeopardy violation. *Isaac*, 211 F.3d 1269, 2000 WL 571959 (6th Cir.2000). Instead, Magistrate Judge Baughman relied on an earlier case, *Madden v. Tate*, in which the Sixth Circuit found that the failure in that indictment to specify the exact dates of the rapes charged against the defendant did not violate due process. *Madden*, 830 F.2d 194, 1987 WL 44909, at *2 (6th Cir. 1987). Because Magistrate Judge Baughman thought that time is not an essential element in the crime of rape and that Mr. Valentine failed to demonstrate prejudice, Magistrate Judge Baughman recommended that Mr. Valentine's petition not be granted on his first claim of relief.

On petitioner's second claim, admission of hearsay testimony, Magistrate Judge Baughman reasoned that because the declarant V testified at trial and the defense counsel cross-examined her, Mr. Valentine's right to confrontation was not violated under existing law.

Mr. Valentine's third claim is that the prosecutor made improper and prejudicial remarks during closing argument which denied Mr. Valentine a fair trial. The Magistrate Judge decided that parts of this claim were procedurally defaulted. The remaining portion of this claim involves the prosecutor's remarks about Mr. Valentine's prior convictions. The Magistrate Judge concluded that even though the remarks were improper, the remarks did not violate Mr. Valentine's due process rights.

On Mr. Valentine's fourth claim, insufficient evidence, Magistrate Judge Baughman found that the state courts' finding of sufficient evidence to convict Mr. Valentine constituted a reasonable application of clearly established federal law.

## B. Petitioner's Objections to the R & R

Under Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1)(C), the Court reviews de novo the portion of the Magistrate Judge's R & R to which specific objection was made. Mr. Valentine's objections to the R & R are essentially the same arguments he has raised in his petition for a writ of habeas corpus. Because Mr. Valentine objects to every portion of the R & R, this Court will review the entire R & R de novo.

### IV. Standard of Review

As Mr. Valentine filed his petition for a writ of habeas corpus on 9 March 1999, after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective, the provisions of the AEDPA govern this case. *Lindh v. Murphy*, 521 U.S. 320, 322–322, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). "The AEDPA limits the ability of federal courts to grant writs of habeas corpus where a state court has considered the federal claim on its merits." *Zobel v. Tate*, 36 Fed.Appx. 772, 776, 2002 WL 220637, at *4 (6th Cir. 2002). The statute provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the particular state prisoner's case." *Id.* at 413, 120 S.Ct. 1495.

A federal court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams,* 529 U.S. at 411, 120 S.Ct. 1495. Moreover, a federal court must presume that a state court's determination of factual issues is correct. A petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith,* 161 F.3d 358, 360–61 (6th Cir.1998).

### V. Law & Analysis

Because on de novo review this Court adopts Magistrate Judge Baughman's R & R as to Petitioner's claims Two, Three, and Four, they will be addressed first.

### A. Claim Two—Hearsay Testimony

The trial court admitted the testimony of Ms. Anderson, the social worker, Ms. Porter, V's elementary teacher, and Ms. Williams, the principal, as to what the child told them about the alleged sexual abuse. Mr. Valentine argues that his rights to due process and to confrontation were violated by the admission of these inadmissable hearsay statements. The Ohio Court of Appeals decided that the social worker's testimony was admissible

under Ohio Evidence Rule 803(4) as statements for the purposes of medical diagnosis or treatment. The Ohio Court of Appeals also concluded that the teacher and the principal's testimony were admissible as excited utterances.[5]

Mr. Valentine's right to confrontation is not violated because the child declarant testified at trial and was subject to full and effective cross-examination. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ("the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination"). As Mr. Valentine's right to confrontation is not violated, this Court cannot say that the admission of the hearsay testimony is so fundamentally unfair to him as to violate his due process rights. The Ohio courts' decisions are not contrary to, nor do they involve an unreasonable application of, federal law.

### B. Claim Three—Prosecutor's Closing Argument

Mr. Valentine's third claim is that he was denied a fair trial and his Fifth, Sixth, and Fourteenth Amendments rights when the prosecutor made improper and prejudicial remarks during closing argument.

The prosecutor raised the issue of Mr. Valentine's past criminal convictions and argued the following in her closing argument:

> Now, look at Michael Valentine, he certainly has shown you no history of rule abiding behavior, responsible behavior.

. . . . .

---

5. Even though excited utterance is under Ohio Evidence Rule 803(2), the Ohio Court of Appeals cited Ohio Evidence Rule 803(3) and

the language of rule 803(3) as well. Rule 803(3) concerns the "then existing, mental, emotional, or physical condition" exception.

Now, look at his record, his criminal record. Conviction for attempted aggravated burglary. A conviction for robbery, another three to fifteen years. Another conviction for escape, a six month sentence and put on probation. And he testified there was no gate keeping him from walking out of whatever facility he walked out of; the facility he walked out of. Is that what [V] needed, a locked gate? Is that what people need to be protected from him? A locked gate. Does he have no sense of boundaries? Do we all have to live in walled cities to protect ourselves from this Michael Valentine?

(Tr. p. 793–94.)

Petitioner argues that the prosecutor's arguments are impermissible for five reasons: (1) vouching for the credibility of the accuser; (2) inviting a jury decision based on sympathy by stating that the accuser was all alone and her whole family was against her; (3) discussing facts not in evidence concerning domestic violence by the accused; (4) arguing the accused was a bad character (which implies that he should be convicted on that basis) because of his prior criminal record; and (5) urging the jury to base its decision on another impermissible reason—"setting a community standard" (Tr. p. 799).

■ A state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c). In order to properly exhaust state remedies, a petitioner must fairly present the substance of his federal constitutional claims to the state courts. *Picard v. Connor,* 404 U.S. 270, 275–276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Mr. Valentine did not present his first three arguments to the Ohio Court of Appeals. He did not present the first three arguments nor the last argument to the Ohio Supreme Court. There-

fore, Mr. Valentine procedurally defaulted on these arguments. *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994). This Court then must determine whether cause and prejudice exist to excuse the failure to present these arguments to the state courts. *Rust,* 17 F.3d at 160. Mr. Valentine cites the page limitation that the Ohio Supreme Court imposed as the cause to his procedural default. Page limitation alone is not sufficient cause to excuse a procedural default. *Seymour v. Walker,* 224 F.3d 542, 551 (6th Cir.2000) (stating that "the page limit 'merely limited the manner in which [Seymour] could present [her] arguments; it did not wholly prevent [her] from presenting them,'" quoting *Weeks v. Angelone,* 176 F.3d 249, 271 (4th Cir.1999).)

■ As to Mr. Valentine's remaining argument, that the prosecutor improperly argued that Mr. Valentine was a bad character because of his prior criminal record, the Ohio Court of Appeals held that because Mr. Valentine's prior convictions were admissible to impeach him and the trial court reminded the jury that closing arguments did not constitute evidence, Mr. Valentine was not denied a fair trial. This Court cannot conclude that the Ohio Court of Appeals' decision is contrary to clearly established federal law or that it involves an unreasonable application of clearly established federal law.

**C. Claim Four—Insufficient Evidence**

■ Mr. Valentine's fourth claim is that the evidence presented against him at trial is constitutionally insufficient to sustain his convictions. He raised this claim before the Ohio Court of Appeals. This Court agrees with Magistrate Judge Baughman that Mr. Valentine has not procedurally defaulted on this claim. Mr. Valentine's Proposition of Law XII before the Ohio Supreme Court, which stated that "[t]he

evidence presented in this case does not attain that degree of probative certainty required to prove the case beyond a reasonable doubt which is constitutionally required," is sufficiently similar to his present claim to preserve the claim.

The Ohio Court of Appeals reviewed the entire record, summarized the evidence in the case, and concluded that 20 verdicts of rape and 15 verdicts of felonious sexual penetration were fully evidenced in the record and were not against the manifest weight of the evidence. How the Court concluded which five verdicts of felonious sexual penetration were not evidenced in the record is impossible to determine as each count is identical, a persistent problem in this case, which will be addressed below in regard to Petitioner's Claim One.

*Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), set the standard for deciding whether evidence is constitutionally insufficient to sustain convictions. The inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319, 99 S.Ct. 2781.

■ Because the victim's testimony is direct evidence in this case, and a rational jury could have believed V's testimony over Mr. Valentine's and other witnesses' testimony, there is sufficient evidence as to the essential elements of rape and felonious sexual penetration. Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Mr. Valentine committed such offenses. No contradiction to or unreasonable application of federal law is shown regarding Mr. Valentine's insufficiency of evidence claim.

## D. Claim One—The indictment

Mr. Valentine claims that his due process right was violated when the indictment failed to specify a date or to distinguish in any way between conduct on any given date or time, which failed to give him sufficient notice of the offense with which he was charged.

The Ohio Court of Appeals correctly construed the issue to be whether the lack of specificity in the indictment as to dates and conduct resulted in a denial of Mr. Valentine's right to due process of law. The Court of Appeals stated that the state must supply specific dates and times for the alleged offense "if it possesses that information." It concluded that, in this case, the lack of specificity in the indictment did not violate Mr. Valentine's due process rights for the following reasons: (1) the victim was an eight-year-old girl who may not be able to remember exact dates and times; (2) there was no evidence that the state had any more specific information than that set forth in the indictment; and (3) Mr. Valentine failed to demonstrate any material detriment to his ability to defend himself.

Mr. Valentine does not contend that the Ohio Court of Appeals' decision is contrary to clearly established United States Supreme Court precedent. Therefore, this Court will analyze whether the Ohio Court of Appeals' decision involves an unreasonable application of clearly established United States Supreme Court precedent.

### 1. *Russell v. United States*

■ The Sixth Amendment of the United States Constitution and the Due Process clause of the Fourteenth Amendment mandate that an indictment give a defendant charged with a crime fair notice of the charges against him or her so as to permit adequate preparation of a defense. *Russell v. United States*, 369 U.S. 749,

763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Under *Russell,* an indictment must (1) contain the elements of the offense charged; (2) provide the defendant adequate notice of the charges against which he must defend; and (3) provide protection against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. *Id.See also Isaac v. Grider,* 211 F.3d 1269, 2000 WL 571959, at *4 (6th Cir.2000).

The principles are well-settled; their application to this case is challenging. The United States Supreme Court held in 1872:

> The object of the indictment is to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment with reasonable particularity of time, place, and circumstances.

*U.S. v. Cruikshank,* 92. U.S. 542, 558 (1872).

### 2. *Application*

#### a. *First Mandate of Russell*

■ This Court recognizes that the Sixth Circuit Court of Appeals has stated that "[f]ailure to specify the precise dates upon which the alleged crimes occurred does not deprive the defendant of his constitutional right to due process where time is not of the essence of the offense and where the dates used are not picked arbitrarily." *Madden v. Tate,* 830 F.2d 194, 1987 WL 44909, at *2 (6th Cir.1987). Time is not an element of the offenses charged against Mr. Valentine. Even though the indictment did not state specific dates, it did contain the elements of the offense charged and it fairly informed Mr. Valentine that he was charged with forcible rape and felonious sexual penetration of a minor, his stepdaughter. Therefore, the indictment here satisfies the first requirement of *Russell* as it contains the elements of the offense charged.

#### b. *Second Mandate of Russell*

Whether the indictment meets the second mandate of *Russell* is a difficult question to answer. On the one hand, it is doubtful that the indictment in this case "sufficiently apprises the defendant of what he must be prepared to meet" to enable him to assert a meaningful defense. *Russell,* 369 U.S. at 763, 82 S.Ct. 1038. The indictment uses bare-bone blanket language taken from the Ohio statutes,[6] charging two sets of 20 identical acts during the same 322 days time span.[7] No particular date, place or circumstances are provided in the indictment. "Undoubtedly, the language of the statute may be used in the general description of an offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific

6. Ohio Rev.Code §§ 2907.02, 2907.12 (repealed).

7. How the prosecutor chose the time span of March 1, 1995 to January 16, 1996 is not entirely clear from the record. Detective Mulhall testified that the time "March 1, 1995" in the indictment was chosen because the child indicated the abuse happened in the Spring of first grade. (Tr. p. 502). The child testified, however, that she did not tell anyone that the sexual abuse started in March 1995 and that it happened a few months after she started the second grade (Tr. P. 284), which would have been a few months after September 1995, and that the weather was getting cold. (Tr. P. 348—49).

offense, coming under the general description, with which he is charged." *U.S. v. Hess*, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516 (1888).

Respondent tries to justify the indictment by arguing that the child victim could not remember the exact dates and time, and that defendant was not prejudiced. As the Sixth Circuit has recognized, while some indulgence of child victims' capacity to remember and articulate exact dates may be merited, there are limits when a defendant's constitutional rights are denied. *Isaac v. Grider*, 211 F.3d 1269, 2000 WL 571959, at *1. In that case, the Sixth Circuit agreed with the petitioner Isaac that duplicate counts in his indictment "made it impossible to investigate and defend the charges and to determine under which counts of the indictment he was convicted." *Id.*

Furthermore, it is presumptuous for the State to assert that Mr. Valentine's defense was not prejudiced by the lack of particularity in the indictment. Upon hearing the two sets of 20 identical verdicts against his client, as the trial court moved to sentencing, Mr. Valentine's trial lawyer stated:

> The only thing I would say, based on the jury verdicts, I mean; what are the particular dates and what are the particular acts? I mean they are not disclosed. I have no idea. I mean, the way it was submitted, you know. It was stacked, because it had to be all or nothing. You couldn't distinguish between count one and count forty, because they allege the same period of time, allege the same act. So I have no idea what specific act he was found guilty on in any count.

(Tr. p. 854–855.) The defense lawyer's frustration is understandable. Because of the identical counts, Mr. Valentine could not defend himself upon each of the individual counts. He could not pin down one count in the indictment, for example, count five, and defend himself on that count because there was no way to determine the specific criminal conduct alleged in that count or to distinguish that conduct from the conduct alleged in any of the other duplicate counts. Instead of determining whether the State had met its burden on each individual count, the jury was left to decide whether it generally believed the State's case or the defendant's defenses. It had to be "all or nothing."

The effect of any defenses Mr. Valentine could raise would be diluted by the two sets of 20 identical counts with no specific time/date, place, or circumstances. For example, Mr. Valentine claims that he had been in a car accident and was physically incapacitated during part of the time period charged, and that he had hepatitis during another part of the time period.[8] (Tr. p. 347, 588, 593.) Even if Mr. Valentine established that he was incapacitated, the extended 322–day time span in question rendered the defenses ineffective and meaningless. As another example, Mrs. Tammie Valentine testified that "[g]enerally [Mr. Valentine's] friends from work would come over after work to hang out." (Tr. p. 656.) Mr. Dennis Valentine testified that he visited Mr. Valentine's house almost every day after work at 4:30, 5:30 or later time. (Tr. p. 562–63.) However, without a specific time or date in the indictment, Mr. Valentine could not rely on such testimony to establish an alibi defense. It is difficult to conceive of how Mr. Valentine could establish any alibi defense against the charges he was facing.

Having acknowledged the difficulty posed by the indictment for the defense,

---

8. Even though Petitioner did not make this prejudice argument in his brief to the Ohio Court of Appeals (State Ex. F), he did raise it in his application for reconsideration filed with the Ohio Court of Appeals (State Ex. I).

this Court also recognizes that the task of the prosecutor in drafting an indictment in such a case is not easy. The lack of specific time and dates is not a result of the prosecutor's choice. The nature of crimes like these and of the victim's capacity make it inherently difficult to provide much specificity in an indictment. However, more could have been done to add a degree of particularity to the indictment. For example, a more detailed pre-indictment interview with the child victim may have revealed what the child testified to at trial: that the alleged abuse started not on 1 March 1995, but a few months after September 1995, when the weather was getting cold. (Tr. p. 284, 348–49.) The prosecutor could have limited the time span for each count to different weeks or months, in order to distinguish one count from another. The indictment could have described specific places or circumstances for each count. In any event, although adding particularity to each count is difficult in this case, there is no indication from the indictment that any effort was made at all.

Because the third mandate of *Russell* is dispositive of Mr. Valentine's first claim of relief, the Court need not determine whether the second mandate of *Russell* was met in this close case.

### c. *Third Mandate of Russell*

 The indictment fails to meet *Russell*'s third mandate, that an indictment provide protection against double jeopardy by enabling the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. *Russell*, 369 U.S. at 763–64, 82 S.Ct. 1038. Mr. Valentine was indicted upon and convicted of 20 identical counts of rape and 20 identical counts of felonious sexual penetration, 5 of which were dismissed by the Ohio Court of Appeals. The U.S. Supreme Court warned against the danger of this type of indictment: "[I]n case any other proceedings are taken against [the defendant] for a similar offence," the record does not show "with accuracy to what extent he may plead a former acquittal or conviction." *Id.* Mr. Valentine's conviction on the identical felonious sexual penetration counts and the subsequent dismissal by the Ohio Court of Appeals of 5 of those identical counts imperil Mr. Valentine's ability to invoke the convictions or dismissals for double jeopardy purposes.

In a similar case, *Isaac v. Grider*, the defendant was convicted of 13 counts of sodomy, attempted sodomy, and sexual abuse relating to four boys. 211 F.3d 1269, 2000 WL 571959, at *1. Counts 7 through 11 were identical, charging sodomy with J.J. between January to April 1994. Counts 22 through 26 were identical, charging sexual abuse of J.J. during the winter/spring of 1994. *Id.* at 211 F.3d 1269, 2000 WL 571959, at *2. At the trial, the state trial court permitted the State to amend the indictment by changing the time period to "between November 1993 and April 1994." *Id.* at 211 F.3d 1269, 2000 WL 571959, at *3. The trial court also entered a judgment of acquittal on four counts before instructing the jury. *Id.* at 211 F.3d 1269, 2000 WL 571959, at *3. The Sixth Circuit held that defendant Isaac's due process rights were violated because the duplicate counts in the indictment "introduced the risk of double jeopardy." [9] *Id.* at 211 F.3d 1269, 2000 WL 571959, at *5.

---

9.　In the R & R, the Magistrate Judge distinguishes *Isaac* on the ground that Mr. Valentine does not claim a double jeopardy violation, nor is there a double jeopardy violation through duplicate counts covering the same period of time. (R & R p. 18.) Mr. Valentine's claim, is a due process claim that the identical counts in the indictment "introduces the risk of double jeopardy."

The Sixth Circuit in *Isaac* further reasoned that, although the trial court acquitted Isaac on four of the identical counts, Isaac could not have known on which counts he was acquitted. Similarly in this case, the Ohio Court of Appeals dismissed 5 counts of the 20 felonious sexual penetration charges against Mr. Valentine. Mr. Valentine could not have known which of the 20 felonious sexual penetration counts against him the Court of Appeals dismissed. The Ohio Court of Appeals did not specify which 5 counts were dismissed, nor could it given that the counts were identical and there was no way to distinguish among them.

Respondent relies on *Madden v. Tate* in support of its position. 830 F.2d 194, 1987 WL 44909. In *Madden*, the defendant was charged with engaging in sexual conduct with his son, who was eleven years old at the time of trial, and his granddaughter, who was eight years old at the time of trial. *Id.* at 830 F.2d 194, 1987 WL 44909, at *1. The indictment charged that the sexual conduct occurred between 1 June 1981 and 31 December 1981, with respect to one count, and between 1 June 1981 and 31 September 1982 with respect to two other counts. The jury found the defendant guilty of all three counts of rape. The Sixth Circuit held that the defendant's due process rights were not violated by the failure to provide more specific times. *Id.* at 830 F.2d 194, 1987 WL 44909, at *2, 3. In *Madden*, however, the three counts could be distinguished from one another as they happened during two different time frames and related to two different victims. In the instant case, nothing distinguishes one count of rape from another count of rape or one count of felonious sexual penetration from another such count.

### d. *Unreasonable Application*

 Having decided that the Ohio Court of Appeals' decision upholding the indictment violated the mandate of *Russell v. United States*, this Court must decide whether that decision involves an unreasonable application of *Russell*. The Ohio Court of Appeals correctly construed the issue to be whether the lack of specificity in the indictment as to dates and conduct resulted in a denial of Mr. Valentine's right to due process of law. The Court of Appeals concluded, that in this case the lack of specificity in the indictment did not violate Mr. Valentine's due process rights for the following reasons: (1) the victim was an eight-year-old girl who may not be able to remember exact dates and times; (2) there was no evidence that the state had any more specific information than that set forth in the indictment; and (3) Mr. Valentine failed to demonstrate any material detriment to his ability to defend himself. This reasoning unreasonably ignored the rights of a defendant, provided by the Sixth and the Fourteenth Amendments to the Constitution of the United States. The State's failure or inability to procure more specific information does not excuse a violation of a defendant's constitutional rights. The protections of the Constitution are not lessened when it is difficult for the government to operate under them. Therefore, the Ohio Court of Appeals' application of clearly established federal law was not only incorrect, but unreasonable. Mr. Valentine's petition for a writ of habeas corpus will be granted on his first claim.

Under *Russell,* an indictment must enable the defendant to plead an acquittal or conviction to bar future prosecutions for the same offense. An indictment violates due process if at the time when the indictment was brought, it fails to protect the defendant from possible double jeopardy.

### VI. Certificate of Appealability

Under AEDPA, an appeal from a denial of a writ of habeas corpus may not be taken unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253. A certificate of appealability may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability must "indicate which specific issue or issues satisfy the showing required." 28 U.S.C. § 2253(c). If a claim was analyzed and rejected by the district court on the merits, the district court must determine whether reasonable jurists could find the district court's decision on that claim "debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). Where a claim is procedurally defaulted, a certificate of appealability should issue only after a showing that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 478, 120 S.Ct. 1595.

Applying these standards, this Court finds that a certificate of appealability is not warranted for Petitioner's Claims Two (hearsay evidence). Three (prosecutor's statement), and Four (insufficient evidence).

### VII. Conclusion

Petitioner Valentine's due process right was violated by the indictment of 20 carbon-copy counts of rape and 20 carbon-copy counts of felonious sexual penetration, each of the 40 counts charging that the crime occurred on the same offense date of a time-span of 322 days. Under the Sixth and the Fourteenth Amendments to the Constitution of the United States, as interpreted by the Supreme Court of the United States, the indictment in this case violated Mr. Valentine's due process right to be notified of the crime charged with such reasonable certainty that he could fairly protect himself after judgment against another prosecution on the same charge. Therefore, a writ of habeas corpus shall issue. However, Petitioner is not entitled to a certificate of appealability as to Claims Two, Three, and Four.

WHEREFORE, Respondent shall release and discharge Petitioner Michael Valentine from custody forthwith. The effect of this Order is stayed pending appellate review.

IT IS SO ORDERED.